**NOT FOR CITATION**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA


ANTONIO GONZALEZ

          Petitioner,                       No. C-04-0967 PJH

          v.

                                      **ORDER REOPENING
ADMINISTRATIVELY CLOSED CASE
AND DENYING PETITION FOR
WRIT OF HABEAS CORPUS**

MIKE KNOWLES, Warden,
Corcoran State Prison,

          Respondent.

_____/

      Before the court is the petition for writ of habeas corpus filed by state prisoner,

Antonio Gonzalez ("Gonzalez") pursuant to 28 U.S.C. § 2254.  Having reviewed the parties'

papers, the record, and having carefully considered their arguments and the relevant legal

authorities, the court hereby DENIES the petition.

**BACKGROUND**

**I.**    **Procedural History**

      On July 29, 1998, Gonzalez was convicted after a bench trial in San Mateo County

Superior Court (No. SC42858A) of the following counts:

      Count One: being a "resident child molester" (California Pen. Code § 288.5) of "Jane

          Doe" between December 1994 and April 3, 1998;

      Counts Two through Four: three instances of lewd and lascivious acts" (§ 288, subd.

          (a)) on "Jane Doe" between the above dates;

      Count Five: a "lewd and lascivious act" on "Jane Doe" on April 3, 1998;

      Count Six: "indecent exposure" (§ 314) to "Jane Doe" on April 3, 1998, with prior

          convictions for "indecent exposure" in September 1996 and November 1997;

United States District Court
For the Northern District of California

United States District Court

For the Northern District of California

Count Seven: "indecent exposure" to "John Doe" on April 3, 1998, with the same prior convictions.

Gonzalez was also charged with a prior 1977 conviction for assault with a deadly weapon (§ 245, subd. (a)) under California's "Three Strikes" Law (§ 1170.12), which the trial court found true.  Accordingly, the trial court doubled his sentence and added a five-year enhancement (§ 667, subd.(a)).  On September 4, 1998, the state trial court sentenced Gonzalez to 18 years and 4 months in state prison.[1]

On March 13, 2000, the California Court of Appeal affirmed Gonzalez's convictions, but reversed his sentence, concluding that the evidence regarding the prior 1977 "serious felony" conviction (on which basis the six-year term on count one was doubled and Gonzalez's sentence enhanced by a five-year term) was insufficient.  The state appellate court remanded the case for resentencing.  Meanwhile, on June 2, 2000, the California Supreme Court denied Gonzalez's petition for review.

On August 18, 2000, prior to his resentencing, Gonzalez filed an ex parte motion for appointment of new counsel, which the trial court denied.  At the resentencing hearing on January 23, 2001, the state trial court dismissed Gonzalez's prior conviction enhancement, but increased his term for count one, the resident child molester conviction, from the six years originally imposed to sixteen years.[2]

On August 31, 2001, while Gonzalez's appeal of the state trial court's resentencing was pending before the California appellate courts, he filed a federal petition for writ of habeas corpus.  This court dismissed the petition on February 8, 2002 as premature,

---

[1] The trial court calculated Gonzalez's sentence as follows: (1) a six-year term for count one, violation of California Penal Code § 288.5, doubled under the "one prior strike" provision of the "Three Strikes" law (Cal. Pen. Code, § 1170.12) to 12 years; (2) a five-year enhancement for the same prior conviction; and (3) a consecutive eight-month term doubled under the "Three Strikes" law to 16 months for count seven, violation of California Penal Code § 314 (indecent exposure).  The court, however, stayed six-year terms for counts two through five and a four-year term for count six under Penal Code § 654.

[2] The court calculated Gonzalez's sentence on remand for resentencing as follows: (1) a 16-year term for count one; (2) eight-year terms for counts two through five, stayed under § 654; and (3) three-year terms for counts six and seven, stayed under § 654.

United States District Court

For the Northern District of California

1    without prejudice to his refiling once the state court proceedings were complete.

2        Subsequently, on September 17, 2002, the California Court of Appeal affirmed

3    Gonzalez's resentencing, and denied another ancillary petition for writ of habeas corpus.[3]

4    On December 11, 2002, the California Supreme Court denied Gonzalez's second petition

5    for review and also his petition for review of the California Court of Appeal's denial of his

6    habeas petition.  Gonzalez filed the instant federal petition for a writ of habeas corpus on

7    March 9, 2004.

8        On September 27, 2004, this court granted Gonzalez's request for a stay so that he

9    could return to state court to exhaust a new claim that he asserted arose based on the

10   United States Supreme Court's June 24, 2004 decision in Blakely v. Washington, 124 S.Ct.

11   2531 (2004).  The San Mateo County Superior Court denied relief on November 10, 2004,

12   and the California Court of Appeal and California Supreme Court denied review on

13   December 14, 2004, and January 5, 2005, respectively.  The United States Supreme Court

14   denied certiorari on June 12, 2006.  Gonzalez filed his amended first petition, which

15   included the *Blakely* claim, on August 24, 2006.

16   **II.    Factual History**

17       During the time period giving rise to the charges in this case, Gonzalez lived with his

18   brother's family in a house on a large estate in Atherton, California, where Gonzalez and

19   his brother both worked.  On April 3, 1998, Gonzalez's nieces, "B" (age 13) and "Z" (age

20   10), and nephew "G" (age 8), returned home from school, and discovered Gonzalez's

21   clothes strewn about in an upstairs bedroom, along with B's and Z's underwear and bras,

22   which were torn.  The children left the house and returned a few minutes later to find that

23   _____

24       [3] Although the state appellate court affirmed Gonzalez's subsequent sentence, it did,
     however, find a Johnson error, and reversed Gonzalez's convictions on counts two through six.
25   Under People v. Johnson, 28 Cal.4th 240 (2002), the California Supreme Court held that a
     defendant may not be convicted both of being a resident child molester during a specified
26   period of time, and of having committed specific sexual offenses during the same time period
     with the same victim.  Here a Johnson error occurred with respect to count one, the resident
27   child molester charge, and counts two through four based on three instances of lewd and
     lascivious acts on "Jane Doe" between December 1994 and April 3, 1998.  However, because
28   the trial court stayed imposition of the sentence for counts two through six, the California Court
     of Appeal determined that it was unnecessary to remand to the trial court for resentencing.

their clothes and underwear had been removed.

The children then went into the garage, where they discovered Gonzalez standing in a closet. Gonzalez's nieces left the garage, at which time Gonzalez exposed his penis to his nephew, G, and asked him to touch it. G ran out of the garage. B and Z then re-entered the garage and demanded to know what Gonzalez had done with their underwear.

B then left the garage, and Gonzalez pulled down his pants and again exposed his erect penis to his niece Z. Z testified that Gonzalez grabbed her hand and pulled it towards his penis. Z struggled, and Gonzalez released her hand. Z then screamed and left the garage.[4]  Z's sister, B, testified that when she told Gonzalez she would tell her parents what had happened that day, Gonzalez offered her $20 not to tell.

Gonzalez's niece, Z, also testified about five other incidents in which Gonzalez had touched her, prior to the April 3, 1998 incident described above. Those incidents allegedly occurred between December 19, 1994 and April 3, 1998. First, Z testified that when she was in second grade, Gonzalez grabbed her from behind, with one arm around her belly, and touched her breasts by moving his hand around on top of her clothes. Second, approximately one month after the first incident, Gonzalez again grabbed Z from behind, with one arm around her belly, and touched her breasts by moving his hand around on top of her clothes. Z testified that she struggled to free herself, and told Gonzalez to stop. Third, Z testified that, a year later, when she was in the third grade, she was playing outside with her brother and sister, B and G, when Gonzalez touched her on the buttocks from behind. Z again told Gonzalez not to touch her. Fourth, Z testified that at the end of her third grade year, Gonzalez stood behind her and touched her vagina through her clothes. Z struggled to get away, and Gonzalez let her go. Fifth and finally, during the summer following third grade, Gonzalez allegedly touched Z on the buttocks as she was walking into the house.

---

[4] According to a statement Gonzalez later gave to police, Z had asked him to hold her hand, and she guided it to his penis. He acknowledged that it was wrong to have Z touch his penis, but he said he thought both he and Z were responsible.

United States District Court

For the Northern District of California

United States District Court

For the Northern District of California

1    The trial court found that of the five alleged incidents of touching, the first, second

2  and fourth were done with lewd intent, as required by the California Penal Code.[5]

3                                     **ISSUES**

4    In his petition before this court, Gonzalez alleges the following five violations of his

5  constitutional rights:

6    (1)    his due process rights were violated because there was insufficient evidence

7            to convict him of being a "resident child molester" and of child molestation;

8    (2)    his equal protection and due process rights were violated when the state

9            court denied his motion to appoint his desired counsel at resentencing;

10   (3)    he received ineffective assistance of counsel when his court-appointed

11          attorney:

12          a.    failed to conduct an adequate investigation prior to resentencing;

13          b.    failed to request appointment of an evaluating psychologist;

14          c.    failed to present mitigating evidence at the resentencing hearing;

15          d.    failed to object to the trial court's increase of his sentence on count one

16                at resentencing;

17   (4)    his due process rights were violated by the alleged relitigation of aggravating

18          factors at his resentencing; and

19   (5)    his constitutional rights were violated when the trial court imposed a sentence

20          that violated Blakely v. Washington, 124 S.Ct. 2531 (2004).

21                              **STANDARD OF REVIEW**

22   This court may entertain a petition for writ of habeas corpus "on behalf of a person in

23  custody pursuant to the judgment of a state court only on the ground that he is in custody in

24  violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).

25  Because the petition in this case was filed after the effective date of the Antiterrorism and

26  Effective Death Penalty Act of 1996 (AEDPA), the provisions of that act apply here.  See

27  _____

28      [5] The trial court's reasoning regarding why the third and fifth incidents were not
committed with lewd intent is not apparent from the record before this court.

5

**United States District Court**
For the Northern District of California

1   Lindh v. Murphy, 521 U.S. 320, 327 (1997).  Under the AEDPA, a district court may not

2   grant a petition challenging a state conviction or sentence on the basis of a claim that was

3   reviewed on the merits in state court unless the state court's adjudication of the claim: "(1)

4   resulted in a decision that was contrary to, or involved an unreasonable application of,

5   clearly established Federal law, as determined by the Supreme Court of the United States;

6   or (2) resulted in a decision that was based on an unreasonable determination of the facts

7   in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254 (d).

8           A state court decision is "contrary to" Supreme Court authority, falling within the first

9   clause of § 2254(d)(1), only if "the state court arrives at a conclusion opposite to that

10  reached by [the Supreme] Court on a question of law or if the state court decided a case

11  differently that [the Supreme] Court has on a set of materially indistinguishable facts."

12  Williams v. Taylor, 529 U.S. 362, 412-413 (2000).  "Clearly established Federal law" under

13  § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at

14  the time the state court renders its decision."  Lockyer v. Andrade, 538 U.S. 63, 71-72

15  (2003).  This "clearly established" law "refers to the holdings, as opposed to the dicta, of

16  [Supreme] Court decisions as of the time of the relevant state court decision."  Id.

17          "Under the 'unreasonable application' clause" of § 2254(d)(1), a federal habeas court

18  may grant the writ if the state court identifies the correct governing leal principle from [the

19  Supreme] Court's decisions but unreasonably applies that principle to the facts of the

20  prisoner's case."  Id. at 64.  However, this standard "requires the state court decision to be

21  more than incorrect or erroneous."  Id. at 75  For the federal court to grant habeas relief,

22  the state court's application of the Supreme Court authority must be "objectively

23  unreasonable."  Id.  The "objectively unreasonable" standard is different from the "clear

24  error" standard in that "the gloss of clear error fails to give proper deference to state courts

25  by conflating error (even clear error) with unreasonableness."  Id. at 75; see also Clark v.

26  Murphy, 331 F.3d 1062, 1068 (9th Cir. 2003).  Therefore, "[i]t is not enough that a habeas

27  court, in its independent review of the legal question, is left with a firm conviction that the

28  state court was erroneous . . . Rather, the habeas court must conclude that the state

**United States District Court**

For the Northern District of California

1  court's application of federal law was objectively unreasonable." <u>Andrade</u>, 538 U.S. 63

2  (citation and internal quotations omitted); <u>see</u> <u>also</u> <u>Clark</u>, 331 F.3d at 1068.

3  As for state court findings of fact, under § 2254(d)(2), a federal court may not grant a

4  habeas petition by a state prisoner unless the adjudication of a claim on the merits by a

5  state court resulted in a decision that was based on an unreasonable determination of the

6  facts in light of the evidence presented in the state court proceeding.  28 U.S.C. §

7  2254(d)(2).  The "clearly erroneous" standard of unreasonableness that applies in

8  determining the "unreasonable application" of federal law under § 2254(d)(1) also applies in

9  determining the "unreasonable determination of facts in light of the evidence" under §

10  2254(d)(2).  <u>See</u> <u>Torres v . Prunty</u>, 223 F.3d 1103, 1107-1108 (9th Cir. 2000).  To grant

11  relief under 2254(d)(2), a federal court must be "left with a firm conviction that the

12  determination made by the state court was wrong and that the one [petitioner] urges was

13  correct."  <u>Id</u>. At 1108.

14  However, when the state court decision does not articulate the rationale for its

15  determination or does not analyze the claim under *federal* constitutional law, a review of

16  that court's application of clearly established federal law is not possible.  <u>See</u> <u>Delgado v.</u>

17  <u>Lewis</u>, 223 F.3d 976, 981-82 (9th Cir. 2000); <u>see</u> <u>also</u> 2 J. Liebman & R. Hertz, Federal

18  Habeas Corpus Practice and Procedure § 32.2, at 1424-1426 & nn. 7-10 (4th ed. 2001).

19  When confronted with such a decision, a federal court must conduct an independent review

20  of the record and the relevant federal law to determine whether the state court's decision

21  was "contrary to, or involved an unreasonable application of, "clearly established federal

22  law."  <u>Delgado</u>, 223 F.3d at 982.

23  When a state court does not furnish a basis for its reasoning, we have no
basis other than the record for knowing whether the state court correctly

24  identified the governing legal principle or was extending the principle into a
new context. . . .[A]lthough we cannot undertake our review by analyzing the

25  basis for the state court's decision, we can view it through the 'objectively
reasonable' lens ground by <u>Williams</u> [, 529 U.S. 362]. . . . Federal habeas

26  review is not de novo when the state court does not supply reasoning for its
decision, but an independent review of the record is required to determine

27  whether the state court clearly erred in its application of controlling federal
law. . . .  Only by that examination may we determine whether the state

28  court's decision was objectively reasonable.

Id.

## DISCUSSION

**I.    There was Sufficient Evidence to Convict Gonzalez of being a "Resident Child Molester"**

Gonzalez claims he was denied his right to due process under the U.S. Constitution because he was found guilty of being a "resident child molester" in count one and of "child molestation" in counts two through four based on insufficient evidence. Specifically, Gonzalez challenges the sufficiency of the evidence of "lewd intent" required by sections 288.5 and 288(a), for which he was convicted in counts one and counts two-four.[6] As noted earlier, the California Court of Appeal reversed Gonzalez's convictions on counts two through four pursuant to the California Supreme Court's decision in People v. Johnson. 28 Cal.4th 240. However, because the three incidents underlying those three counts, combined with the April 1998 incident, constituted the predicate "three or more acts" required for conviction under section 288.5(a) (resident child molester), the sufficiency of the evidence regarding those incidents is relevant even though Gonzalez's convictions on those counts were reversed.[7]

As discussed, the state trial court found lewd intent beyond a reasonable doubt with

---

[6]  California Penal Code § 288(a), on which counts two through four were based, states: "Any person who willfully and lewdly commits any lewd or lascivious act, including any of the acts constituting other crimes provided for in Part 1, upon or with the body, or any part or member thereof, of a child who is under the age of 14 years, with the intent of arousing, appealing to, or gratifying the lust, passions, or sexual desires of that person or the child, is guilty of a felony and shall be punished by imprisonment in the state prison for three, six, or eight years.

California Penal Code § 288.5(a), on which count one was based, states, "Any person who either resides in the same home with the minor child or has recurring access to the child, who over a period of time, not less than three months in duration, engages in three or more acts of substantial sexual conduct with a child under the age of 14 years at the time of the commission of the offense, as defined in subdivision (b) of Section 1203.066, or three or more acts of lewd or lascivious conduct under Section 288, with a child under the age of 14 years at the time of the commission of the offense is guilty of the offense of continuous sexual abuse of a child and shall be punished by imprisonment in the state prison for a term of 6, 12, or 16 years."

[7]  Gonzalez does not challenge the "lewd intent" finding with respect to the April 1998 incident, but only the incidents underlying counts two through four. See Plaintiff's Traverse, p. 5.

United States District Court
For the Northern District of California

United States District Court

For the Northern District of California

respect to three of the five incidents that Z testified occurred prior to the April 1998 incident. These incidents of "lewd and lascivious acts," upon which counts two through four and count one (the charge of being a "resident child molester") were based, took place between December 19, 1994 and April 3, 1998.[8]

Gonzalez makes arguments before this court similar to those he made before the state appellate court in arguing that the evidence regarding lewd intent with respect to counts two through four was insufficient. Gonzalez emphasizes that Z's sister, B, stated that he had "never done anything like this before," and implies that Z's reports of the incidents giving rise to counts two through four may have possibly been prompted by "over-zealous inquiries." Gonzalez also contends that had Z originally perceived the pre-April 3, 1998 touchings as inappropriate, she would have reported the incidents to her parents. Instead, Gonzalez characterizes the pre-April 1998 incidents as "roughhousing" or a "wrestling type of play." He argues that there is no distinction between the touchings of Z's behind, the incidents for which the state trial court did not find lewd intent, and the touchings of Z's breast and vaginal area, for which the court did find lewd intent.

In concluding that there was sufficient evidence, the California Court of Appeal rejected each of these arguments. First, the court noted that evidence that the touchings may have occurred during play and the absence of contemporaneous complaints did not "compel the trier of fact to conclude that the acts were not accompanied by the requisite intent." Instead, based on state law, the state appellate court noted that the trier of fact must look to all of the circumstances, including the charged act, to determine whether the

_____

[8]The facts bear repeating. In the first incident which occurred when Z was in second grade, Gonzalez grabbed Z from behind with one arm around her stomach and touched her breasts by moving his hand around on top of her clothes. In the second incident which occurred about one month later, Gonzalez again grabbed Z from behind with one arm and touched her breasts through her clothes with his other hand. Z struggled to get away and told Gonzalez he should not do that to her. In the third incident which occurred when Z was in the third grade, Gonzalez touched Z's vagina through her clothes as he stood behind her. Z tried to get away and Gonzalez let her go. There were two additional incidents in which Gonzalez touched or patted Z on the behind, once when Z was in third grade and once the summer after Z was in third grade. However, the trial court found insufficient evidence of lewd intent with respect to the latter two incidents involving the touching of Z's behind. (RT 202-203).

United States District Court

For the Northern District of California

1    requisite intent was present.  People v. Martinez, 11 Cal.4th 434, 444-445 (1995).

2    "[R]elevant factors can include the defendant's extrajudicial statements, *other acts of lewd*

3    *conduct admitted or charged in the case*, the relationship of the parties, and any coercion,

4    bribery, or deceit used to obtain the victim's cooperation or avoid detection."  Id.

5         The state appellate court then cited numerous factors which provided sufficient

6    evidence for the trial court's finding of lewd intent regarding counts two through four,

7    including:  (1) that Z immediately recognized that Gonzalez's conduct was not normal play;

8    (2) that Z struggled to get away during two of the alleged incidents; (3) that Z advised

9    Gonzalez not to touch her in such a manner; (4) that Gonzalez attempted to bribe Z's

10   sister, B, with $20 not to tell her parents; and (5) Gonzalez's admission that it was wrong to

11   have Z touch his penis.

12        In arguing to this court in the instant federal habeas petition that his due process

13   rights were violated, Gonzalez again emphasizes that the lewd intent for the incidents

14   underlying counts two through four cannot be inferred from the April 1998 incident, the

15   incident for which Gonzalez does not dispute the existence of lewd intent.  Specifically,

16   Gonzalez contends that the trial court, and the state appellate court in its affirmance,

17   improperly inferred "lewd intent" in the three pre-April 1998 touchings from the April 3, 1998

18   incident in violation of state evidentiary law.[9]  Gonzalez asserts that any such inference was

19   _____

20        [9] Gonzalez relies on California Evidence Code § 1101, which provides:

21        (a) Except as provided in this section and in Sections 1102, 1103, 1108, and 1109,
     evidence of a person's character or a trait of his or her character (whether in the form
22   of an opinion, evidence of reputation, or evidence of specific instances of his or her
     conduct) is inadmissible when offered to prove his or her conduct on a specified
23   occasion.

24        (b) Nothing in this section prohibits the admission of evidence that a person committed
     a crime, civil wrong, or other act when relevant to prove some fact (such as motive,
25   opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or
     accident, or whether a defendant in a prosecution for an unlawful sexual act or
26   attempted unlawful sexual act did not reasonably and in good faith believe that the
     victim consented) other than his or her disposition to commit such an act.
27
          (c) Nothing in this section affects the admissibility of evidence offered to support or
28   attack the credibility of a witness.

United States District Court

For the Northern District of California

1   inappropriate given that the April 1998 touchings and the earlier touchings occurred under

2   different circumstances.[10]

3       The Due Process Clause "protects the accused against conviction except upon proof

4   beyond a reasonable doubt of every fact necessary to constitute the crime with which he is

5   charged." In re Winship, 397 U.S. 358, 364 (1970).  A state prisoner who alleges that the

6   evidence in support of his state conviction cannot be fairly characterized as sufficient to

7   have led a rational trier of fact to find guilt beyond a reasonable doubt therefore states a

8   constitutional claim, see Jackson v. Virginia, 443 U.S. 307, 321 (1979), which, if proven,

9   entitles him to federal habeas relief, see id. at 324.

10      A federal court reviewing collaterally a state court conviction does not determine

11  whether the evidence established guilt beyond a reasonable doubt.  Payne v. Borg, 982

12  F.2d 335, 338 (9th Cir. 1992).  Instead, the federal court "determines only whether, 'after

13  viewing the evidence in the light most favorable to the prosecution, any rational trier of fact

14  could have found the essential elements of the crime beyond a reasonable doubt.'"  See id.

15  (quoting Jackson, 443 U.S. at 319).  Only if no rational trier of fact could have found proof

16  of guilt beyond a reasonable doubt, may the writ be granted.  See Jackson, 443 U.S. at

17  324; Payne, 982 F.2d at 338; Miller v. Stagner, 757 F.2d 988, 992-93 (9th Cir. 1985),

18  amended, 768 F.2d 1090 (9th Cir. 1985); Bashor v. Risley, 730 F.2d 1228, 1239 (9th Cir.

19  1984).

20      This court concludes that the state appellate court reasonably and correctly found

21

22  California Evidence Code § 1108(a), which governs "[e]vidence of another sexual offense by
    the defendant" states:

23

24      Evidence of another sexual offense by defendant; disclosure; construction of
        section(a) In a criminal action in which the defendant is accused of a sexual

25      offense, evidence of the defendant's commission of another sexual offense or
        offenses is not made inadmissible by Section 1101, if the evidence is not

26      inadmissible pursuant to Section 352.

27      [10] As noted, Gonzalez alleges that the earlier touchings occurred during normal play.
    In contrast, Gonzalez asserts that the April 1998 touchings occurred when he was extremely

28  intoxicated and had been behaving bizarrely, including trying on the girls' underwear in their
    absence.

United States District Court

For the Northern District of California

1  substantial evidence to support the trial court's finding of lewd intent with respect to the

2  incidents underlying counts two through four, which formed a basis for Gonzalez's

3  conviction on count one.  First, the state appellate court listed sufficient evidence apart from

4  the April 1998 incident, which supported a finding of lewd intent with respect to the pre-April

5  1998 incidents.  As noted, this evidence included: Z's testimony (1) that she immediately

6  recognized that Gonzalez's conduct was not normal play, (2) that she struggled to get away

7  from Gonzalez during the second and third incidents, and (3) that she told Gonzalez not the

8  touch her in that manner following the second incident.

9      Gonzalez, however, argues that B's statement to the police that Gonzalez must have

10  been drunk since he had "never done anything like that before," and the fact that Z never

11  reported the pre-April 1998 incidents to her parents, constitute evidence that no

12  inappropriate touchings occurred prior to April 1998.  Gonzalez's arguments are

13  unpersuasive.  A child may fail to report the incidents to a parent or sibling or delay

14  disclosure of the incidents due to the shame, humiliation, fear and confusion often felt by a

15  child who has been touched inappropriately by a previously-trusted adult.  See e.g. United

16  States v. Bighead, 128 F.3d 1329, 1330 (9th Cir. 1997)(expert rebuttal testimony regarding

17  typical characteristics of child sexual abuse victims, including delayed disclosure,

18  admissible in prosecution for sexual abuse of minor).

19      Gonzalez also argues that the incidents occurred in the context of horseplay, and

20  that there was no distinction between the third and fifth incidents in which Gonzalez

21  touched Z on her behind, for which the state trial court did not find lewd intent, and the first,

22  second, and fourth incidents where Gonzalez fondled Z's breasts and vagina through her

23  clothes, for which the state trial court did find lewd intent.  Gonzalez therefore implies that

24  there was no lewd intent with respect to any of the incidents prior to April 1998.

25      However, the state courts could reasonably have determined that there was a

26  distinction between the incidents.  It is not improbable that a child may be inadvertently

27  touched or patted on the behind during horseplay, where no lewd intent on the part of the

28  adult is involved.  Indeed, there are other contexts in which innocent patting on the behind

occurs in our society, such as in sports.  In contrast, it is highly unlikely that touching a child

on the breasts or vagina by an adult would be considered innocent "horseplay" or

"roughhousing".  Therefore, it was not unreasonable for the trial court to distinguish

between the incidents; nor was the state appellate court's affirmance unreasonable.

Accordingly, this claim fails.

**II.    Gonzalez's Sixth Amendment and Due Process Rights were not Violated by the Trial Court's Refusal to Appoint His Desired Appellate Counsel for Resentencing**

Gonzalez next claims that his constitutional rights were violated when he was denied

appointment of counsel of his choice at his resentencing.  He claims that he was not given

a fair hearing on the issue because the state trial court refused to exercise its discretion to

appoint his desired counsel, and instead appointed the private defender.

A brief factual background is helpful.  On Gonzalez's first appeal to the California

Court of Appeal, the court appointed attorney Richard Such ("Mr. Such") to represent

Gonzalez.  Upon the state appellate court's remand for resentencing, Mr. Such filed a

motion in San Mateo County Superior Court to be appointed to represent Gonzalez on the

grounds that: (1) Gonzalez desired his representation; (2) Mr. Such had Gonzalez's

confidence; and (3) Mr. Such was familiar with Gonzalez's case and had begun to prepare

for the resentencing hearing by meeting with Gonzalez's family and contacting a

psychologist to evaluate him.  Furthermore, Mr. Such noted that Gonzalez had raised

issues concerning the competency of his trial counsel (a private defender) in the appellate

and related habeas corpus proceedings, and that it would therefore be inappropriate to

reappoint the same trial counsel for the resentencing.

Gonzalez filed an ex parte motion for appointment of Mr. Such, which was heard by

the trial court on September 21, 2000.  The trial court denied Gonzalez's request and

instead appointed a private defender, noting that it would be an unusual step to appoint

someone else.  The judge also observed that the resentencing was to be a fairly

straightforward court trial, that it was unlikely that the attorney who represented Gonzalez

United States District Court

For the Northern District of California

United States District Court

For the Northern District of California

1   at trial would be reappointed to represent Gonzalez again, and that Gonzalez could be

2   competently and appropriately represented by an attorney in the private defender program.

3   The private defender program designated Mr. Garcia as Gonzalez's attorney on remand.[11]

4        On Gonzalez's second appeal, that of the trial court's resentencing, the state

5   appellate court concluded that the trial court did not abuse its discretion in denying

6   Gonzalez his desired counsel.  The state appellate court reasoned that Gonzalez had no

7   long-term relationship with his counsel of choice, Mr. Such, and that the prosecution did not

8   enjoy a significant advantage because a private defender was appointed.  Applying state

9   law regarding the appointment of counsel, the state appellate court found that Gonzalez's

10  reasons for desiring appointment of Mr. Such were not sufficient and were distinguishable

11  from those in the state case upon which Gonzalez relied, Harris v. Superior Court, because

12  Gonzalez's case was a simple one, and little time and expense were required to achieve

13  familiarity with the issues.  See 19 Cal.3d 786, 796-799 (1977) (objective factors

14  concerning the appointment of an attorney, including the attorney's familiarity with the

15  relevant factual and legal matters and the defendant's trust and confidence in the attorney

16  built up over a substantial period of time, may make failure to appoint the attorney an

17  abuse of discretion).   Furthermore, the state appellate court found that Mr. Such's prior

18  representation of Gonzalez would not have greatly facilitated the retrial of the prior

19  conviction allegation and subsequent sentencing proceedings.

20       To the extent that Gonzalez claims before this court that the state appellate court

21  erroneously found no abuse of discretion under state law, this claim is not cognizable on

22  federal habeas review.  See Estelle v. McGuire, 502 U.S. 62, 67-68 (1991) (federal habeas

23  relief does not lie for state law errors but is limited to violations of federal constitutional

24  rights).

25       Gonzalez, however, asserts that he is not claiming that the trial court abused its

26  _____

27       [11] Mr. Garcia was a new private defender who had not yet worked on Gonzalez's case.
28  Mr. Morales, the original private defender who represented Gonzalez at the first trial, and to
    whom Gonzalez objected, was not reappointed.

**United States District Court**
For the Northern District of California

1   discretion under state law, or that he has a federal constitutional right to counsel of choice.

2   Instead, Gonzalez claims that his due process rights were violated because he did not

3   receive a fair hearing before the state trial court on the issue of appointment of counsel of

4   his choice, implying a procedural due process issue.

5          In arguing his due process claim before this court, Gonzalez nevertheless cites the

6   same reasons he argued before the state appellate court with respect to his claim that the

7   trial court abused its discretion.  These include: (1) Gonzalez's appellate attorney had been

8   representing him for nearly two years and was his counsel of choice; (2) with the absence

9   of a public defenders office, the cost to the county of his counsel of choice versus the

10  private defender would have been the same; and (3) the judge gave no reason for not

11  appointing Gonzalez's counsel of choice other than that it would be unusual not to appoint

12  the private defender.

13         The state appellate court rejected each of these arguments in the context of

14  Gonzalez's abuse of discretion claim.  Citing state law, the state appellate court found that

15  the appointment of counsel rests within the discretion of the trial court, and that such

16  discretion is not abused where the trial court fails to appoint the attorney that the defendant

17  requested, who is willing to undertake the appointment.  <u>People v. Horton</u>, 11 Cal.4th 1068,

18  1098 (1995); <u>Drumgo v. Superior Court</u>, 8 Cal.3d 930, 934 (1973).  It noted nevertheless

19  that a trial court may abuse its discretion by adhering to a fixed policy of appointing its

20  "own" counsel in every case, *"without affording the defendant an opportunity to explain*

21  *what circumstances, if any, might warrant a different appointment."*  <u>People v. Horton</u>, 11

22  Cal.4th 1098; <u>People v. Chavez</u>, 26 Cal.3d 334, 346-348 (1980)  (emphasis added).

23  However, the state appellate court found that, in Gonzalez's case, the court followed its

24  usual procedure of appointing counsel through the private defender program only after

25  reviewing counsel's ex parte motion and conducting a hearing on the issue.

26         Based on this court's review of the record, this court concludes that the state court's

27  findings were reasonable and did not constitute an "obvious subterfuge to evade the

28  consideration of a federal issue."  <u>See</u> <u>Peltier v. Wright</u>, 15 F.3d 860, 861 - 862 (9th Cir.

1    1994) (federal courts generally bound by state court's construction of state laws, except in

2    the above circumstances).

3        To the extent that Gonzalez presents a procedural due process claim regarding the

4    hearing, that claim also fails.[12]  As noted by the state appellate court, and confirmed by the

5    record in this case, although the state trial court denied Gonzalez's motion to appoint Mr.

6    Such and chose "to follow the usual procedure of appointing counsel through the private

7    defender program, it did so only after reading [Gonzalez's] counsel's ex parte motion and

8    conducting a hearing at which it invited counsel to state any additional reasons for

9    appointing [Mr. Such] to represent [Gonzalez]."  At the hearing, Gonzalez was personally

10   present and was assisted by a Spanish language interpreter.  Furthermore, the state trial

11   judge gave Mr. Such ample opportunity to present oral arguments in support of Gonzalez's

12   motion.

13       The denial of a motion to substitute counsel implicates a defendant's Sixth

14   Amendment right to counsel and is properly considered in federal habeas.  Bland v.

15   California Dep't of Corrections, 20 F.3d 1469, 1475 (9th Cir. 1994), overruled on other

16   grounds by Schell v. Witek, 218 F.3d 1017 (9th Cir. 2000).  The Ninth Circuit has held that

17   when a defendant voices a seemingly substantial complaint about counsel, the trial judge

18   should make a thorough inquiry into the reasons for the defendant's dissatisfaction.  Id. at

19   1475-76; United States v. Robinson, 913 F.2d 712, 716 (9th Cir. 1990); Hudson v. Rushen,

20   686 F.2d 826, 829 (9th Cir. 1982).[13]  The inquiry need only be as comprehensive as the

21   circumstances reasonably would permit, however.  King v. Rowland, 977 F.2d 1354, 1357

22   (9th Cir. 1992) (record may demonstrate that extensive inquiry was not necessary).

23       Here, Gonzalez did not seek to substitute counsel; nor did he assert a "conflict"

24

25       [12] The state appellate court neither ruled on nor construed Gonzalez's claim as a
     procedural due process issue.

26       [13] People v. Marsden, 2 Cal. 3d 118 (1970), requires the trial court to permit a criminal
27   defendant requesting substitution of counsel to specify the reasons for his request and
     generally to hold a hearing.  This California rule substantially parallels the one prescribed by
28   the Ninth Circuit in Hudson v. Rushen.  See Chavez v. Pulley, 623 F. Supp. 672, 687 n.8 (E.D.
     Cal. 1985).

United States District Court

For the Northern District of California

United States District Court

For the Northern District of California

1    involved with representation by the private defender.[14]  Accordingly, the procedural due

2    process standards for substitution of counsel proceedings in a conflict situation provide

3    guidance but are not controlling.

4         A trial court must conduct a thorough inquiry into whether the defendant was

5    deprived of an adequate defense, and such inquiry need only be as comprehensive as

6    circumstances reasonably permit.  Hudson v. Rushen, 686 F.2d 826, 829, 831 (9th Cir.

7    1982) cited in King, 977 F.2d at 1357.  The inquiry in the present case was at least as

8    comprehensive as that approved by the Ninth Circuit in King, a case involving a state

9    prisoner's motion to substitute counsel based on an alleged conflict of interest due to the

10   appointed public defender's fear and dislike of his client after his client assaulted him, a

11   previously-appointed public defender, and a police officer in open court on three separate

12   occasions.  King, 977 F.2d at 1357.  In King, the judge considered the defendant's

13   complaints, posed several inquiries to the defendant, and was familiar with the factual

14   background.  Id.  The Ninth Circuit found that because there was no indication that the

15   attorney could not do his job properly in spite of the strained relationship, and because the

16   record suggested that King was attempting to delay and disrupt the trial, the judge did not

17   err in failing to substitute King's public defender.  Id.

18        Here, as set forth above, the trial court considered Gonzalez's ex parte motion for

19   appointment of counsel, and gave Gonzalez the opportunity to argue the motion.  Because

20   the judge was "satisfied that the defendant [could] be competently and appropriately

21   represented by the private defender program," he denied Gonzalez's motion for

22   appointment of counsel.  The trial court's inquiry was informed, thorough and

23   comprehensive, and further inquiry was unnecessary.  Id.

24        Morever, as Gonzalez concedes, the law is clear that he had no right to counsel of

25

26   _____

         [14] As noted, Gonzalez argued at the hearing that his original private defender from the
27   trial, Mr. Morales, should not represent him at the resentencing because the issue of Mr.
     Morales' competence was raised on appeal and in habeas corpus proceedings before the state
28   courts. However, a new private defender, Mr. Garcia, was appointed for Gonzalez's second
     appeal.

17

1   his choice. <u>Brown v. Craven</u>, 424 F.2d 1166, 1170 (9th Cir. 1970) (A court is not required

2   to provide an indigent defendant with a particular attorney whom he may desire); <u>Caplin &</u>

3   <u>Drysdale, Chartered v. United States</u>, 491 U.S. 617, 624 (1989) ("The [Sixth] Amendment

4   guarantees defendants in criminal cases the right to adequate representation, but those

5   who do not have the means to hire their own lawyers have no cognizable complaint so long

6   as they are adequately represented by attorneys appointed by the courts."); <u>United States</u>

7   <u>v. Schaff</u>, 948 F.2d 501, 505 (9th Cir. 1991) (An indigent defendant is not entitled to an

8   attorney who likes and feels comfortable with him); <u>Morris v. Slappy</u>, 461 U.S. 1, 13 (1983)

9   (The Sixth Amendment does not guarantee meaningful relationship between accused and

10  his counsel).

11       Gonzalez's Sixth Amendment and due process rights were not violated by the trial

12  court's conduct of the hearing, nor by its refusal to appoint his desired counsel.  This

13  habeas claim therefore fails.

14  **III.    Gonzalez was not Denied Effective Assistance of Counsel.**

15       Gonzalez also claims that he received ineffective assistance of counsel from his

16  court-appointed attorney, Mr. Garcia, during the resentencing hearing due to: (1) counsel's

17  failure to conduct an adequate investigation prior to resentencing; (2) counsel's failure to

18  request appointment of an evaluating psychologist; (3) counsel's failure to present

19  mitigating evidence at the resentencing hearing; and (4) counsel's failure to object to the

20  trial court's increase of his sentence on count one at resentencing.

21       Gonzalez raised the ineffective assistance claims before the state court for the first

22  time in his petition for writ of habeas corpus before the California Supreme Court.  The

23  court issued a "postcard denial" of the habeas petition, denying review without comment.

24  Where the state court issues a "postcard denial," this court construes the denial as one on

25  the merits and sufficient for exhaustion purposes.  <u>See</u> <u>Greene v. Lambert</u>, 288 F.3d 1081,

26  1086-87 (9th Cir. 2002).   Therefore, this court must conduct an independent review of the

27  record and the relevant federal law to determine whether the state court's decision was

28  "contrary to, or involved an unreasonable application of, clearly established federal law."

United States District Court

For the Northern District of California

1    Delgado, 223 F.3d at 982.

2        **A.    Federal Habeas Standard**

3        A claim for ineffective assistance of counsel is cognizable as a claim for denial of the

4    Sixth Amendment right to counsel, which guarantees not only assistance, but effective

5    assistance of counsel.  Strickland v. Washington, 466 U.S. 668, 686 (1984).  The

6    benchmark for judging any such claim must be whether counsel's conduct so undermined

7    the proper functioning of the adversarial process that the trial cannot be relied upon as

8    having produced a just result.  Id.  The right to effective assistance of counsel applies to the

9    performance of both retained and appointed counsel without distinction.  See Cuyler v.

10   Sullivan, 446 U.S. 335, 344-45 (1980).

11       In order to prevail on a Sixth Amendment ineffectiveness of counsel claim, Gonzalez

12   must establish two things.  First, he must establish that counsel's performance was

13   deficient, i.e., that it fell below an "objective standard of reasonableness" under prevailing

14   professional norms.  Strickland, 466 U.S. at 687-88.  This requires showing that counsel

15   made errors so serious that counsel was not functioning as the "counsel" guaranteed by

16   the Sixth Amendment.  See Strickland, 466 U.S. at 687.  Second, Gonzalez must establish

17   that he was prejudiced by counsel's deficient performance, i.e., that "there is a reasonable

18   probability that, but for counsel's unprofessional errors, the result of the proceeding would

19   have been different."  Id. at 694.  Gonzalez must show that counsel's errors were so

20   serious as to deprive him of a fair trial, a trial whose result is unreliable.  Strickland, 466

21   U.S. at 688.  A reasonable probability is a probability sufficient to undermine confidence in

22   the outcome.  Id.

23       A defense attorney has a general duty to make reasonable investigations or to make

24   a reasonable decision that makes particular investigations unnecessary.  See Strickland,

25   466 U.S. at 691; Turner v. Duncan, 158 F.3d 449, 456.  Strickland directs that "'a particular

26   decision not to investigate must be directly assessed for reasonableness in all the

27   circumstances, applying a heavy measure of deference to counsel's judgments.'"  Silva v.

28   Woodford, 279 F.3d 825, 836-37 (9th Cir. 2002) (quoting Strickland, 466 U.S. at 491).

1    Where the decision not to investigate further is taken because of reasonable tactical

2  evaluations, the attorney's performance is not constitutionally deficient. See Siripongs v.

3  Calderon, 133 F.3d 732, 734 (9th Cir. 1998).  Strategic choices made after thorough

4  investigation of law and facts relevant to plausible options are virtually unchallengeable.

5  See Cacoperdo v. Demosthenes, 37 F.3d 504, 508 (9th Cir. 1994) (decision whether to

6  introduce medical evidence largely question of professional judgment).

7    The duty to investigate and prepare a defense does not require that every

8  conceivable witness be interviewed.  Hendricks v. Calderon, 70 F.3d 1032, 1040 (9th Cir.

9  1995).  A claim of failure to interview a witness cannot establish ineffective assistance

10  when the person's account is otherwise fairly known to defense counsel.  Eggleston v.

11  United States, 798 F.2d 374, 376 (9th Cir. 1986).  When the record shows that the lawyer

12  was well-informed, and the defendant fails to state what additional information would be

13  gained by the discovery he now claims was necessary, an ineffective assistance claim fails.

14  Id.  A defendant's mere speculation that a witness might have given helpful information if

15  interviewed is not enough to establish ineffective assistance.  See Bragg v. Galaza, 242

16  F.3d 1082, 1087 (9th Cir. 2001), amended, 253 F.3d 1150 (9th Cir. 2001), called into doubt

17  on different basis, Lockhart v. Terhune, 250 F.3d 1223, 1231 (9th Cir. 2001).

18    A difference of opinion as to trial tactics does not constitute denial of effective

19  assistance, see United States v. Mayo, 646 F.2d 369, 375 (9th Cir. 1981), and tactical

20  decisions are not ineffective assistance simply because in retrospect better tactics are

21  known to have been available.  See Bashor v. Risley, 730 F.2d 1228, 1241 (9th Cir. 1984).

22  Tactical decisions of trial counsel deserve deference when: (1) counsel in fact bases trial

23  conduct on strategic considerations; (2) counsel makes an informed decision based upon

24  investigation; and (3) the decision appears reasonable under the circumstances.  See

25  Sanders, 21 F.3d at 1456.   Judicial scrutiny of counsel's performance must be highly

26  deferential, and a court must indulge a strong presumption that counsel's conduct falls

27  within the wide range of reasonable professional assistance.  See Strickland, 466 U.S. at

28  689.  The relevant inquiry is not what defense counsel could have done, but rather whether

United States District Court

For the Northern District of California

1    the choices made by defense counsel were reasonable.  See Siripongs, 133 F.3d at 736;

2    Babbitt v. Calderon, 151 F.3d 1170, 1173 (9th Cir. 1998).

3        **B.    Analysis**

4        In the present case, after the trial court denied Gonzalez's motion to appoint his

5    desired counsel, Mr. Such, Mr. Such wrote a five-page letter, which included his

6    recommendations regarding the sentencing hearing, to Gonzalez's appointed attorney, Mr.

7    Garcia.  Petitioner's Brief, Exhibit L.  Mr. Such's letter suggested that Mr. Garcia should

8    interview Gonzalez's family members as potential witnesses at the resentencing hearing.

9    In addition, Mr. Such recommended that Mr. Garcia make an ex parte request for the

10   appointment of a psychologist in order to determine possible brain damage, to assess

11   whether Gonzalez had the personality characteristics of a 'pedophile,' and to assess

12   whether Gonzalez would be likely to commit other crimes against children.[15]

13       However, Mr. Garcia did not request appointment of an evaluating psychologist and

14   did not interview or present evidence from Gonzalez's family at the hearing.  Instead, Mr.

15   Garcia emphasized Gonzalez's alcohol abuse, noting that the molestations occurred while

16   Gonzalez was under the influence, and argued that Gonzalez's crimes were mitigated on

17   this basis.

18       **i.    Investigation and Mitigating Evidence**

19       Gonzalez argues that he showed indications of mental health problems, which Mr.

20   Garcia should have further investigated.[16]  He contends that a mental health examination

21

22

23

24       _____

25       [15] In addition to the five-page letter, Mr. Garcia also had an hour-long telephone
     conversation with Mr. Such the night before the resentencing was scheduled, during which Mr.
26   Such offered to assist Mr. Garcia with the case without compensation from the court.  There
     is no further information in the record as to what, if any, further assistance Mr. Such provided
27   in the case.

28       [16] Gonzalez contends that his bizarre behavior of trying on girls' underwear and
     subsequent odd behaviors, combined with his drinking problems, indicated mental illness.

21

United States District Court

For the Northern District of California

1    may have revealed that he did not have a problem that made recidivism likely.[17]

2        However, this court agrees with the state that Gonzalez's claim sets out a mere

3    difference in tactics between two defense attorneys and does not meet the <u>Strickland</u> test

4    for ineffective assistance.  First, Mr. Garcia had a letter from Mr. Such detailing the

5    investigation that had already been conducted, and could reasonably have relied on the

6    letter to conclude that an adequate investigation had already been completed.  Additionally,

7    Mr. Garcia was not required to agree with Mr. Such's tactical recommendations, and could

8    also have reasonably rejected the suggestions.

9        Reasonable professional judgment supports Mr. Garcia's decision not to conduct

10   further investigation.  <u>Strickland</u>, 466 U.S. at 690-691 ("[S]trategic choices made after less

11   than complete investigation are reasonable precisely to the extent that reasonable

12   professional judgments support the limitations on investigation).  Having received Mr.

13   Such's letter, Mr. Garcia was aware of the potential testimony that Gonzalez's relatives

14   could have provided at the resentencing hearing.  His decision not to call family members

15   as witnesses may appropriately be considered a tactical decision.  <u>See</u> <u>Siripongs</u>, 133 F.3d

16   at 736 (relevant inquiry is not what defense counsel could have pursued, but whether

17   choices made were reasonable).  Additionally, such testimony from family members may

18   be discounted due to bias.  <u>Cf.</u> <u>Bergmann v. McCaughtry</u>, 65 F.3d 1372, 1380 (7th Cir.

19   1995) (finding decision not to call family members as witnesses a reasonable strategic

20   decision because of their inherent bias).

21       Furthermore, the record reveals no indication that Gonzalez suffered from mental

22   illness, and Gonzalez's family members confirmed in their interviews with Mr. Such that

23   they likewise observed no indication of mental illness.  In addition, Gonzalez's probation

24   _____

25   [17] Gonzalez argues that the following facts indicate the reduced likelihood that he would
     re-offend: (1) that he was 45 years old when arrested and had not been previously arrested
26   for a crime against children; (2) that B testified that he had never done anything like this before;
     (3) that his family welcomed him among their children; (4) that the children in the case sought
27   him out rather than vice versa; (5) that the trial court noted that his § 288 violation was less
     serious than typical cases; (6) that his previous convictions for indecent exposure involved
28   adult women; and (7) that it is unlikely that pedophilic tendencies would "suddenly emerge in
     a middle-aged man."

United States District Court

For the Northern District of California

1    report contains no discussion of mental illness.  In the absence of evidence of mental

2    illness, Mr. Garcia was not deficient in rejecting Mr. Such's recommendation and choosing

3    not to pursue a mental illness defense.  See Wilson v. Henry, 185 F.3d 986, 990 (9th Cir.

4    1999) ("A decision not to pursue testimony by a psychiatric expert, when no mental state

5    defense seems likely, is not unreasonable under Strickland.")  Additionally, absent evidence

6    that a psychiatric examination would have revealed mental illness, which he has not

7    provided, Gonzalez cannot prove prejudice in his case.  See Grisby v. Blodgett, 130 F.3d

8    365, 372-73 (9th Cir. 1997) ("Speculation about what an expert could have said is not

9    enough to establish prejudice."); Wildman v. Johnson, 261 F.3d 832, 839 (9th Cir. 2001).

10        At the resentencing hearing, Mr. Garcia orally presented mitigating factors.  He

11   pointed out that Gonzalez had no "strikes," that Gonzalez had already been punished for

12   his previous criminal history, and that Gonzalez had a problem with alcohol and engaged in

13   the conduct at issue only when under the influence of alcohol, an argument that Mr. Garcia

14   made at Gonzalez's direction.  Finally, Mr. Garcia pointed out that Gonzalez was 47 years

15   old, and had never been committed to the California Department of Corrections.

16   Presentation of these mitigating factors was an objectively reasonable strategy, and

17   counsel's performance cannot be characterized as deficient.

18                    **a.    Gonzalez is not Entitled to an Evidentiary Hearing**

19        In his traverse, Gonzalez also suggests that he is entitled to an evidentiary hearing

20   on this issue.  He requested an evidentiary heating before the state court, see Exh. 11 at 5,

21   but the California Supreme Court declined to order one.  Presumably, the

22

23

24   court determined that Gonzalez's verified petition, including the accompanying

25   declarations, did not make out a prima facie case entitling him to an evidentiary hearing.

26   See 5 Witkin, Cal. Crim. Law 3d, § 227, at 352 (2000 ed)(citing People v. Jackson, 618

27   P.2d 149, 164 (Cal. 1980)) (if the petition fails to reveal facts sufficient to make out a prima

28   facie case, request for evidentiary hearing may be summarily denied), overruled on other

     grounds by People v. Cromer, 24 Cal.4th 889, 901 (2001).

**United States District Court**
For the Northern District of California

1    "A state habeas petitioner is entitled to an evidentiary hearing on a claim if he did not

2    receive a full and fair evidentiary hearing in state court and if he alleges facts that, if

3    proven, would entitled him to relief." <u>Turner v. Calderon</u>, 281 F.3d 851, 890 (9th Cir.

4    2002)(citations omitted).  There is no "per se rule requiring an evidentiary hearing

5    whenever a petitioner has made out a 'colorable claim' of cause." <u>Id</u>. (citation omitted).

6    "Rather, a petitioner must establish that his allegation. . . , if proven, would establish a

7    constitutional deprivation." <u>Id</u>. (citation omitted).  The Ninth Circuit has held that

8    "[e]ntitlement to an evidentiary hearing based on alleged ineffective assistance. . . requires

9    a showing that if [the petitioner's] allegations were proven at the evidentiary hearing,

10   deficient performance and prejudice would be established." <u>Id</u>.

11       Gonzalez suggests that an evidentiary hearing would allow him to develop evidence

12   regarding the possibility of a contributing mental illness.  However, Gonzalez ignores the

13   fact that the issue before this court is *not* Gonzalez's mental state or competence, but his

14   trial counsel's alleged failure to conduct an adequate investigation into his mental state at

15   sentencing.  There is no factual dispute regarding his trial counsel's investigation; and

16   Gonzalez has not shown how factual development would establish his counsel's allegedly

17   deficient performance or prejudice.  Accordingly, his request for an evidentiary hearing is

18   likewise denied.

19              **ii.    Failure to Object**

20       Gonzalez also contends that his trial counsel rendered ineffective assistance by

21   failing to object to the increased term at resentencing.  This claim, however, ignores the

22   arguments that counsel did make at the hearing.  Mr. Garcia argued to the court at the

23   resentencing hearing that the lower term should be imposed due to the "de minimus" nature

24   of Gonzalez's § 288 violation.  In spite of counsel's argument, the trial court chose to

25   impose the upper term.[18]

26   _____

27       [18] At the hearing, the state trial court found numerous aggravating factors as well as
     some mitigating factors, but concluded that the aggravating circumstances outweighed the
28   mitigating factors.  The judge therefore imposed the upper term.   The aggravating factors

United States District Court

For the Northern District of California

1    Because Mr. Garcia's request for a lower term was rejected by the trial court, it is

2    inconceivable that an objection to the higher term would have been successful.

3    Accordingly, Gonzalez is unable to show either deficient performance or prejudice with

4    respect to this claim, and the state court's rejection of his ineffective assistance of counsel

5    claim is neither contrary to, nor an unreasonable application of <u>Strickland</u>.

6

7    **IV.    Gonzalez's Right to Due Process was Not Violated by the Trial Court's Imposition of the Upper Term on Count One at Resentencing.**

8

9    Finally, Gonzalez claims that he was denied his right to due process when the trial

10   court reconsidered the aggravating factors and appropriate sentence on count one at

11   resentencing.  Gonzalez claims that relitigation of his sentence violates principles of res

12   judicata.

13   As noted, at Gonzalez's original sentencing hearing on September 3, 1998, the court

14   sentenced Gonzalez to the lower term for count one, noting that this case involved less

15   serious conduct than that seen in other § 288.5 cases.  The court then doubled the term

16   and added a five-year enhancement due to Gonzalez's prior serious felony conviction

17   under California's Three Strikes law.  The court also included an additional 16-month

18   sentence for count seven, such that the original final sentence was 18 years and four

19   months.[19]  At the resentencing hearing on January 23, 2001, however, the court increased

20   Gonzalez's term for count one from the lower six-year term to the upper sixteen-year term.

21

22   included: (1) Gonzalez's prior convictions; (2) Gonzalez's poor performance on probation in
     the past; and (3) the evidence of planning in the present case.  The mitigating circumstances

23   included: (1) that the prior conduct giving rise to the 288.5 charge was found to be less serious
     than typical 288 violations; and (2) Gonzalez had never been to prison before.  At the original

24   sentencing, the state trial court judge found that, as a second strike case, a double midterm
     served at 80 percent would result in a virtual life sentence.  He found this to be an additional

25   mitigating factor and therefore imposed the lower term.  After the prior strike was dismissed,
     this mitigating factor was no longer present.  Therefore, at the resentencing, the aggravating
     factors outweighed the mitigating factors, resulting in the upper term.

26

27   [19] As discussed, in the first appeal, the California Court of Appeal overturned the original
     sentence, and remanded the case for retrial of the prior serious felony enhancement and strike

28   allegation and for resentencing if it could not be proved.  On remand, the trial court dismissed
     the allegation of prior serious felony conviction.

1   The terms for all other counts were stayed.

2   Gonzalez argues here that the trial court's original determination that the lower term

3   was appropriate was an implicit determination that the mitigating factors outweighed the

4   aggravating factors, and that the trial court's later determination to the contrary offended

5   equitable principles of res judicata and violated his due process rights.  Gonzalez asserts

6   that, at the original sentencing hearing, the trial court's imposition of the lower term

7   constituted a factual finding akin to "acquitting" Gonzalez of the upper and middle terms.

8   Therefore, Gonzalez contends that when the trial court's sentence on count one, the lower

9   term, was not challenged on appeal, it became final and is therefore entitled to res judicata

10  effect.

11  Here, and in his state appeal, Gonzalez relied on a state court decision in which the

12  state appellate court held that principles of res judicata were violated by a redetermination

13  that defendant's prior federal bank robbery conviction was a "serious felony."   People v.

14  Mitchell, 81 Cal. App.4th 132 (2000).  Gonzalez argues that in the present case, the

15  weighing of the aggravating versus mitigating factors involved an evidentiary process at the

16  original sentencing hearing in which the prosecution had a full and fair opportunity to

17  present its case.  Gonzalez further asserts that the prosecution had the opportunity to

18  appeal the court's determination to impose the lower term and chose not to.

19  The state appellate court rejected the instant res judicata and due process claims.

20  The court concluded that it was not fundamentally unfair for the trial court to revisit

21  Gonzalez's sentence on count one, and to reconsider the mitigating and aggravating

22  factors in light of the newly dismissed convictions as long as Gonzalez was not subjected to

23  an increase in the aggregate term.  Moreover, the state appellate court determined that it

24  was questionable whether the California law cited by Gonzalez applied to the trial court's

25  discretionary sentencing choice at issue in this case.[20]

26  _____

27  [20] The state appellate court further noted that even if the case relied on by Gonzalez,
28  Mitchell, applied, the state court's reasoning in Mitchell should be rejected in light of its
    subsequent analysis in People v. Scott, which discredited the Mitchell holding.  85 Cal.App.4th

United States District Court
For the Northern District of California

United States District Court

For the Northern District of California

1    The state appellate court's decision comports with federal law.  The Ninth Circuit has

2    held that a resentencing mandate from an appellate court erases the entire initial sentence

3    and authorizes a district court to impose any sentence which could have been lawfully

4    imposed originally.  Kennedy v. United States, 330 F.2d 26, 29 (9th Cir. 1964); Cf. id. at 27

5    (however, on resentencing the trial court may not increase or make more severe the valid

6    portions of the sentence originally imposed where service of the legal portions of the

7    sentence has commenced).  Accordingly, the state appellate court's determination that the

8    trial court was free to reconsider the overall length of Gonzalez's sentence upon

9    resentencing, as long as the resulting overall sentence was not increased, was reasonable.

10   **V.    The Sentence Imposed by the Trial Court does not violate Blakely**

11   Gonzalez also argues that the trial court's sentence violated Blakely because it

12   improperly found aggravating facts which increased his sentence, thus denying his right to

13   a jury trial on those facts.  In denying Gonzalez's state habeas petition, the superior court

14   noted that Gonzalez consented to a court trial and waived his right to trial by jury.

15   Accordingly, the state court found that he voluntarily waived the right to have a jury

16   determine the additional facts that were used to enhance his sentence.  Exh. R, Amended

17   Petition.

18   In Blakely, the United States Supreme Court held that a state habeas petitioner's

19   sentence, enhanced pursuant to the state of Washington's sentencing guidelines based on

20   additional findings by the trial court, violated the petitioner's Sixth Amendment rights.  124

21   S.Ct. at 2534-38.  In so holding, the Court restated its holding announced in Apprendi, that

22   "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime

23
24   905 (2000) (the principles of res judicata do not apply until there has been a final determination on the merits, which does not occur simply because a finding was made in an ongoing proceeding; conclusion that there is not sufficient evidence to support an allegation of prior
25   conviction of serious felony is only a determination of defendant's continuing status, not an acquittal, and the prosecution is entitled to reallege and retry this as many times as is
26   relevant).  Following the state appellate court's decision in Gonzalez's case, Mitchell was explicitly overruled by the California Supreme Court in People v. Barragan. 32 Cal.4th 236
27   (2004) (in a noncapital sentencing context, retrial of a prior conviction allegation is not barred by double jeopardy clause of the federal Constitution, fundamental fairness doctrine or res
28   judicata principles.)

1 beyond the statutory maximum must be submitted to a jury, and proved beyond a

2 reasonable doubt." Blakely, 124 S.Ct. at 2536 (citing Apprendi, 530 U.S. at 490).

3      Here, the court need not determine whether Gonzalez's waiver of a jury trial also

4 waived his right to a jury on sentencing enhancements because Gonzalez is not entitled to

5 relief since Blakely does not apply retroactively to the relief he seeks on collateral review.

6 See Cook v. United States, 386 F.3d 949 (9th Cir. 2004) ("the Supreme Court has not made

7 Blakely retroactive to cases on collateral review"); accord Cooper-Smith v. Palmateer, 397

8 F.3d 1236, 1246 (9th Cir. 2005).

9 **CONCLUSION**

10      By this order, this matter, previously closed for administrative purposes, is

11 REOPENED.  For the reasons set forth above, Gonzalez's petition for a writ of habeas

12 corpus is DENIED.  This order fully adjudicates the motion listed at No. 1 of the clerk's

13 docket for this case and terminates all other pending motions.  The clerk shall close the file.

15 **IT IS SO ORDERED.**

17 Dated: August 31, 2006

18     PHYLLIS J. HAMILTON
    United States District Judge

United States District Court
For the Northern District of California